**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LAMAR R. THOMAS,

     Plaintiff,

         v.

POCONO MOUNTAIN SCHOOL
DISTRICT and DWIGHT R. PFENNIG,

     Defendants.

CIVIL ACTION NO. 3:10-CV-1946

(JUDGE CAPUTO)

## MEMORANDUM

Lamar R. Thomas, Sr., worked as a non-teaching assistant for the Pocono Mountain School District from 1995 until he left on September 7, 2010.  He then filed this complaint against the District and Superintendent Dwight Pfennig. He alleges that he was discriminated against on account of his age and race. Additionally, he alleges retaliation because of his complaints of discriminatory treatment and exercising his First Amendment rights, and deprivation of equal protection.  The defendants move to dismiss, (Doc. 5.), arguing that Thomas failed to exhaust his administrative remedies and lacks sufficient factual allegations to show he is entitled to relief. For the reasons explained below, the motion will be granted in part and denied in part. Thomas will be given to amend his complaint to correct the deficiencies in his factual allegations.

1

## I. Background[1]

Lamar Thomas, an African-American over forty years old, was employed by the Pocono Mountain School District as a non-teaching assistant from 1995 until he quit on September 7, 2010. At all times, Thomas performed his duties well and received positive performance reviews. Thomas alleges that on account of his race and age he was placed at the lowest end of the pay scale for his job classification; he was subjected to offensive racial and age-based comments by co-workers; he was subjected to racially-motivated, meritless criticism; unlike similarly-situated white employees or similarly-situated younger employees, he was excluded from discussions and proceedings about his job classification and was denied legal representation in proceedings regarding his job classification; beginning June 2008 his job was classified in such a way that he lost pay and benefits; and "his role, authority, and ability to do his job" was diminished. He was removed from his position category eighteen months before his retirement rights would have fully vested, so he lost many benefits. Additionally, he was subjected to a lower pay range and more limited hours. Thomas objected to this treatment, but the District failed to investigate his complaints or otherwise alleviate the discrimination. Thomas alleges that solely because of the discrimination he faced, he quit his job years before he would have had he not been subjected to discrimination.

After Thomas complained about being discriminated against because of race and age, he was effectively demoted and suffered lost pay, benefits, and authority. He was ostracized from other employees. Additionally, two of the programs Thomas had created and

---

[1] For purposes of deciding this motion, the facts in the complaint are assumed to be true, and are stated in the light most favorable to the plaintiff.

run for the District were removed from his authority, and his supervisory authority was removed and his role diminished. He was further subjected to increased scrutiny and his wife, who also worked for the District, had her employment conditions altered.

Superintendent Dwight R. Pfennig removed Thomas from a salaried position and instead made him a member of the bus-drivers' union, removed his supervisory authority, removed several programs from Thomas's oversight, closely scrutinized him, isolated Thomas from other employees, did not adequately handle Thomas's discrimination complaints, and changed Thomas's wife's employment situation so that she was replaced with another contract employee.

Thomas brings claims under 42 U.S.C. §§ 1981 and 1983 (equal protection and First Amendment); Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act, codified at 29 U.S.C. § 621et seq.; and the Pennsylvania Human Relations Act.

The defendants move to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). They argue that his claims fail because of inadequate allegations and failure to exhaust.

## II. Discussion

### A. Legal Standard on a Motion to Dismiss

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual

allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211. Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension*

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.*

## B. Title VII, ADEA, and PHRA Claims

Thomas brings claims of hostile work environment, constructive discharge, and retaliation under Title VII and the Age Discrimination in Employment Act. Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race. . . ." 42 U.S.C.  § 2000e-2(a)(1).  The ADEA prohibits employers from discriminating against individuals in hiring, termination, compensation or conditions of employment on the basis of age, 29 U.S.C. § 623(a)(1), and protects those who are at least forty years old, 29 U.S.C. § 631(a).  The PHRA, 43 Pa. Cons. Stat. § 951 et seq., mirrors the requirements of Title VII and applies to, inter alia, race and age discrimination. The defendants urge dismissal of these claims at Counts I—VI of the compliant.  They argue that these claims were not timely filed, that Thomas failed to exhaust his administrative remedies, and that his allegations fail to state a claim under Rule 8(a).

### 1. Timeliness and Failure to Exhaust

The defendants argue that Thomas's claims should be dismissed for lack of jurisdiction because his claims are untimely and he failed to exhaust.  Filing a timely charge of discrimination with the EEOC "is not a jurisdictional prerequisite to filing suit under Title

VIII or the ADEA. Rather, it is a requirement more in the nature of a statute of limitations . . . ." *Hammer v. Vardio Med. Products, Inc.*, 131 F. App'x 829, 831 (citing *Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997). A complaint may be dismissed for failing to state a claim on statute of limitations grounds when it is clear from the face of the complaint that its claims are time-barred. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

Under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice before pursuing remedies in federal court. 42 U.S.C. § 2000e–5(e)(1); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). Failure to exhaust the claim within the 300-day period deprives a federal court of jurisdiction over the claim. *See Noel v. The Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010). "This statute of limitations applies to discrete employment actions, including promotion decisions." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. However, "[h]ostile environment are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115 (internal citations omitted). Thus, the unlawful employment practice "cannot be said to occur on any particular day." *Id.* In keeping with the statute's requirement that a charge be filed within 300 days "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e–5(e)(1), a charge alleging a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are

part of the same unlawful employment practice and at least one act falls within the time period," *Morgan*, 536 U.S. at 122.

Here, although the plaintiff has not specifically alleged discriminatory action occurring within 300 days of filing his EEOC charge, it is also not clear from the face of his complaint or his EEOC charge that it is time-barred.  Discrete actions happening before the limitations period will be time-barred. The same reasoning applies to the plaintiff's PHRA claims. Under the PHRA, "[a]ny complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination, unless otherwise required by the Fair Housing Act." 43 Pa. Cons. Stat. § 959(h). Here, it is not certain from the face of the complaint that the plaintiff's claims are time-barred.

The defendants also argue that Thomas's constructive discharge claim must fail because the action occurred after the EEOC charge was filed on September 18, 2008 and is therefore outside the limitations period (Thomas resigned on September 7, 2010). Thus, they raise a failure-to-exhaust defense. Additionally, they assert that the discrimination and retaliation claims are outside the scope of his EEOC charge and thus must be dismissed as unexhausted.

As the Third Circuit Court of Appeals has explained, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." *Ostapowics v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976). The civil action is limited to claims within the scope of the original EEOC charge. *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).  A subsequent civil action must be based on claims related to the original filing.

"A victim of discrimination is not required to exhaust administrative remedies with

7

respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint." *Waiters v. Parsons*, 729 F.2d 233, 235 (3d Cir. 1997). Thus, courts permit claims not explicitly stated in the EEOC charge "where there [is] a close nexus between the facts supporting the claims raised in the charge and those in the complaint." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984).  The Third Circuit has declined to adopt a *per se* rule that all claims of "retaliation" based on the filing of an EEOC complaint are "ancillary" to the original complaint and therefore no further EEOC charge need be filed. *See Waiters*, 729 F.2d at  237 n.10 (3d Cir. 1997). "[T]he mere fact that a complainant has pending a complaint of discrimination does not mean that the requirements of administrative exhaustion are necessarily excused." *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997). Instead, a case-by-case examination of the prior pending EEOC charge and the unexhausted claim is necessary to determine whether the unexhausted claim fairly falls within the scope of the prior EEOC charge or grew out of it. *Id.*

The Third Circuit explained this requirement In *Waiters v. Pasons*, 729 F.2d 233 (3d Cir. 1997). In *Waiters*, the plaintiff filed a formal charge alleging continuing sex discrimination in retaliation for having made an earlier informal complaint about discrimination. The following year, she was fired from her government position, but on appeal, her sanction was reduced to a suspension. The plaintiff filed suit and the district court dismissed her complaint for failure to exhaust the discharge claim with the EEOC. *Id.* at 235. The Third Circuit reversed on the grounds that the allegedly retaliatory discharge was within the scope of the EEOC investigation because the plaintiff had alleged that the "same retaliatory intent" that

8

the EEOC found permeated her workplace had let do her termination. *Id.* at 238. Thus, the Third Circuit concluded that "the [plaintiff's] core grievance—retaliation—[wa]s the same" as that filed in her EEOC charge. *Id.*

Here, Thomas raises discrimination and retaliation in his EEOC charge. In his complaint, he brings a constructive discharge claim that grew out of the same discriminatory harassment he complained about in his charge. Thus, under *Waiters*, a second EEOC charge is not necessary, and dismissal is not warranted on the grounds of failure to exhaust.

### 2. Failure to State a Claim Under Rule 8(a)

The defendants also argue that Thomas fails to allege sufficient facts "showing" that he is entitled to relief under the pleading standards articulated by the Supreme Court in *Twombly* and *Iqbal.* This Court agrees; many of Thompson's allegations fall short of what is required by Federal Rule of Civil Procedure 8(a), and thus Thomas's discrimination and hostile work environment claims under Title VII, the ADEA, and the PHRA must be dismissed.

To establish a prima facie discrimination claim, a plaintiff must show that he (1) belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410–12 (3d Cir. 1999); *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (applying framework to age discrimination claims). Here, the plaintiff has alleged he is African-American and over forty, and has thus satisfied the first prong; his employment satisfies the second.  Thomas, however, fails to satisfy the third and fourth prongs.

**(a) Race Discrimination**

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). A mere reassignment or demotion without a change in pay, benefits, duties, or prestige is insufficient. *See Ellerth*, 524 U.S. at 761 (internal citations omitted). Bruising an employee's ego does not constitute an adverse employment action. *See id.*

Thomas alleges that he was (1) "placed at the lowest end of the pay scale for his job classification;"(2) "subjected to offensive racial comments by co-workers;" (3) "subjected to racially-motivated, meritless criticism for performance of his job duties by other District employees;" (4) excluded from discussions and proceedings regarding his job classification, "unlike similarly situated white employees," and denied legal representation in these proceedings, "unlike similarly situated white employees;" (5) subject to a new job classification, and as a result, he suffered a lower pay range and loss of benefits and income; and (6) faced with having his "role, authority, and ability to do his job diminished."

Additionally, Thomas alleges that he was constructively discharged.

While the allegations set forth above at (1) and (5) may constitute adverse employment actions, Thomas alleges no facts which would permit the court to infer of discrimination.  Thomas could have been placed at the lowest end of the pay scale or had his job reclassified for perfectly neutral, nondiscriminatory reasons.  No facts suggest that these actions were discriminatory.

The allegation at (6) is not developed enough to show that it constituted an adverse employment action, nor are facts or circumstances alleged that give rise to an inference of discrimination. Simply claiming, in conclusory fashion, that one's role or ability to do one's job was "diminished" does not show an adverse employment action.  To show an adverse employment action, there must be sufficient factual information so that an inference that an actual change in the terms of his employment occurred.[2]

The allegations at (2) and (3) show neither an adverse employment action nor discrimination. They are bereft of factual content and present conclusions: stating that a comment is "offensive," "racially-motivated," or "meritless," *tells* the Court that the pleader's *opinion* is that he faced discrimination. Rule 8(a) requires more than *telling* the Court. Rule 8(a) requires that the pleader *show* the Court that the pleader faced discrimination by alleging facts that, if true, allow the Court to reasonably infer that the defendants are liable to the plaintiff for discrimination. The pleader may be able to show this by particularly alleging (for example) who made specific comments in which evaluation, and stating the content of the comment.

The allegation at (4) shows differential treatment, which can give rise to an inference of discrimination. Nevertheless, it fails to allege an adverse employment action because there is no showing of a substantial change in employment status. There is also no factual linkage between the allegations at (4) and those at (5) that might allow the claim to pass muster. That is, the plaintiff does not allege that as a result of being kept out of proceedings regarding his job classification, his job was reclassified, resulting in his loss of benefits.

---

[2]

For example, an allegation that one's role was switched from Head Manager to Manager, which was perceived as less prestigious and resulted in a lower salary, is factually sufficient to show an adverse employment action.

The claim of constructive discharge likewise fails. While a claim of constructive discharge constitutes an "adverse employment action, *see Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998), Thomas fails to allege facts showing he was constructively discharged. Establishing constructive discharge requires showing that an "employer knowingly permitted conditions of employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)). Thomas fails to allege facts showing an intolerable situation.   Although Thomas argues that he faced "racially-motivated" criticism, this appears to be mere speculation in the absence of facts from which a reasonable inference of discrimination can be drawn. He alleges in conclusory fashion that he was subjected to "offensive racial comments," but fails to describe the comments, who made them and when, and show whether the defendant knowingly allowed them.  The legal conclusion in the complaint that Thomas faced "severe, pervasive, and ongoing" harassment and discrimination is inadequate. For his claims to survive dismissal, Thomas must allege facts *showing*[3] that he faced pervasive and severe harassment which led to his constructive discharge. Thus, Thomas's discrimination claim at Count I must be dismissed.

---

[3]

The difference between "alleging" and "showing" can seem a fine one. This difference was explained in a recent opinion from the District of New Jersey as follows:

> To illustrate, Plaintiff might state, for instance, the following facts: "on such-and-such day, Defendant X walked into my cell and committed such-and-such actions, e.g., hit Plaintiff" but Plaintiff cannot substitute such facts with conclusory statements reading, for example, as follows: "Defendant X conspired with Defendant Y to obstruct Plaintiff's actions."

*Hoffenberg v. Grondolsky*, Civ. No. 09-4784, 2009 WL 5103181, at *4 n.7 (D.N.J. Dec. 17, 2009).

**(b) Age Discrimination**

At Count III of his complaint, Thomas brings a claim under the Age Discrimination in Employment Act.  Thomas alleges that he was (1) "placed at the lowest end of the pay scale for his job classification;"(2) "subjected to age-based comments by others in the employ of the defendant;" (3) excluded from discussions and proceedings regarding his job classification, "unlike similarly situated younger employees," and denied legal representation in these proceedings, "unlike similarly situated younger employees;" (4) "removed from his position category eighteen months [before] his retirement rights would have fully vested, with the result of losing many of his retirement rights and benefits;" (5) subjected to a lower pay range with more limited hours; and (6) had his "role, authority, and ability to do his job diminished."

These allegations mirror those made under his race discrimination claim at Count I, and fail for largely the same reasons. The allegation at (2) is factually inadequate to show employer liability because they do not state who made the comments, what the comments were, and when and how often they occurred, and whether there was an adverse employment action.  The allegations at (3) do not show an adverse employment action. The remainder of the allegations do not show any adverse employment action occurring in circumstances giving rise to an inference of age discrimination.  Therefore, the age-based discrimination claim at Count III must be dismissed.

**(c) Hostile Work Environment**

At Counts I and III of the complaint, Thomas also asserts age- and race-based hostile work environment claims. Thomas's hostile work environment claims fail. To establish a

hostile work environment claim, a plaintiff must show that:

> (1) he suffered intentional discrimination because of his [race or age]; (2) the discrimination was pervasive and regular; (3) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability.

*Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *see Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (assuming without deciding that age discrimination hostile work environment claim can be brought); *Abraham v. Abington Friends Sch.*, 215 F. App'x 83, 85 (3d Cir. 2006) ("Assuming that [hostile work environment] claims are cognizable under the ADEA" ...). Courts consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Harris v. Forklift Systems, Inc.*, 5100 U.S. 17, 23 (1993), in determining whether the factual allegations, if true, rise to the level of a hostile work environment. However, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (internal citations omitted).

Here, Thomas relies primarily on conclusory assertions. He states he faced discrimination and harassment that "was severe, pervasive, and on-going." However, he fails to allege specific facts that show that he faced discrimination that was related to his race or age[4] that was pervasive and regular and severe enough to affect a reasonable person. Thus, his hostile work environment claims must be dismissed for failing to state claims upon which

---

[4] The court does not hold that a hostile work environment claim is cognizable under the ADEA. Instead, the Court simply holds that, assuming such a claim is cognizable, Thomas has failed to allege that he suffered a hostile work environment on account of his age.

relief can be granted.

### (d) Retaliation

Thomas also alleges he was retaliated against after complaining about being discriminated against on the basis of race and age by, *inter alia*, being demoted, being removed from programs, enduring increased scrutiny, having his wife's working conditions changed, and being separated from other employees.  A prima facie case of retaliation requires that a plaintiff show that (1) he engaged in conduct Title VII protects; and (2) because of this conduct, (3) the employer took adverse employment action against him. *See Charlton v. Paramus Bd. of Ed.*, 25 F.3d 194, 201 (3d Cir. 1994). Here, by complaining about discrimination Thomas has met the first prong; the alleged demotion, at least, would satisfy the third prong and allow the claim to survive. However, Thomas fails to show a causal connection between Thomas's participation in a protected activity and the adverse action with respect to race discrimination. Causation "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Telephone Co.*, 683 F.2d 339, 343 (10th Cir. 1982), *cert. denied*, 459 U.S. 1071 (1982). Here, while Thomas claims he faced disparate treatment "after" he complained about discrimination, he fails to allege specific facts from which an inference of causation can be drawn. In contrast, his retaliation claim based on age discrimination at Count IV *does* allege facts from which an inference of causation can be drawn: the complaint at paragraph 33 states "*[u]pon learning* of plaintiff's allegations of age discrimination, defendant created a hostile work environment . . . " (emphasis added). The immediacy suggested by the words "upon learning" permit the Court

to draw the inference that Thomas's demotion *was caused* by his complaint of age discrimination because of the temporal proximity of the two events. Thus, Thomas's age discrimination retaliation claim at Count IV survives dismissal, while the race-based retaliation claim at Count II under Title VII will be dismissed.

For the reasons explained above, Thomas's claims under the PHRA fail with respect to discrimination, but the retaliation claim at Count VI survives dismissal with respect to age discrimination.

## C. Section 1981 Claim

Thomas brings a claim at Count VII of the complaint for race discrimination and retaliation under 42 U.S.C. § 1981. The defendants correctly point out that the Third Circuit has held that § 1983 is "the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Because no private right of action lies against a state actor under § 1981, this claim must be dismissed. *See Ford v. Southeastern Pa. Transp. Authority*, 374 F. App'x 325, 326 (3d Cir. 2010) ("The exclusive remedy for relief from a state agency for civil rights violations, including race discrimination, is § 1983.").

## D. Equal Protection and First Amendment Claims

Defendants urge that Thomas's constitutional claims brought under § 1983 at Counts VIII and IX (First Amendment and Fourteenth Amendment) of the complaint be dismissed as untimely. In Pennsylvania, a two year statute of limitations applies to § 1983 actions. Here, no time bar is evident from the face of the complaint and thus these claims will not be

dismissed on this ground, although the plaintiff will be unable to rely on discrete events occurring more than two years prior to filing for his claim.

The defendants also argue that Thomas's allegations are insufficient to state a claim under Rule 8(a). They argue that Thomas simply engages in a formulaic recitation of the elements of his claims, and that he therefore fails to show that he is entitled to relief in accordance with Rule 8(a). Because he fails to allege sufficient facts showing his right to relief, the defendants urge dismissal for failure to state a claim upon which relief can be granted. The Court agrees.

A public employee plaintiff states a First Amendment retaliation claim by alleging that his "activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). A public employee's speech is protected by the First Amendment only when the employee is speaking as a citizen on a matter of public concern, and not pursuant to his official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 418-21 (2006). To show that protected conduct was a substantial factor in the retaliation, a plaintiff must generally show either:

> (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof, the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation.

*Lauren W. V. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

Here, Thomas has failed to allege facts showing that he was speaking as a citizen on a matter of public concern and that his conduct was a substantial factor in the retaliation. *Cf. Beyer v. Borough*, No. 10-3042, 2011 WL 1420605, *4 (3d Cir. Apr. 14, 2011) (holding that police officer alleged facts that he was speaking as a citizen rather than as public employee

17

pursuant to his official duties by alleging that he recommended a purchase pseudonymously on the internet after hours of research "on his *own* time," rather than pursuant to police officer duties, and thus his claim withstood 12(b)(6) dismissal.  While the topic of Thomas's speech—racial equality—is clearly a matter of public concern, the complaint is devoid of any indication that Thomas was not speaking pursuant to his official duties; indeed, he noted that he engaged in expressive activity "in the course of his employment." Even assuming Thomas spoke as a citizen, there is no indication that his speech was a substantial factor in his treatment. *See Beyer*, 2011 WL 1420605, at *5 (noting that the allegations that a council member questioned him by letter about his internet posts twice and demanded a meeting shortly before terminating him, and holding that these facts led to an inference that the protected activity was a substantial factor in his termination). Additionally, the retaliatory action must be sufficient to deter a person of ordinary firmness from exercising his rights. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). While Thomas alleges he "was subjected to differential treatment and a hostile work environment," this is a conclusion, and Thomas fails to *show* the Court, by alleging *facts*, that his treatment was severe enough to deter an person of ordinary firmness from speaking about racial equality.

Thus, Thomas's First Amendment claim will be dismissed. The Court will next consider Thomas's equal protection claim.

To state an equal protection claim, a plaintiff must allege purposeful discrimination. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990). A defendant in a civil rights action must be personally involved in the alleged wrongs by directing them or knowingly acquiescing in them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (1988).

Here, Thomas alleges that Defendant Pfennig "acted personally and affirmatively to discriminate and retaliate against plaintiff." However, the complaint fails to allege specific facts *showing* that Pfennig directly discriminated against him. *Cf. Richardson v. Sherrer*, 344 F. App'x 755, 758 (3d Cir. 2009) (affirming dismissal of claims where sufficient facts were not pled to show personal involvement or actual knowledge or acquiescence). While the complaint alleges that Pfennig orchestrated some of the treatment of the plaintiff, there are no facts showing that Pfennig did so because of his race.   Thus, the complaint fails to state an equal protection claim against Pfennig.

To maintain a § 1983 claim against a municipality, the plaintiff must allege he was deprived equal protection pursuant to an official policy or custom. *See Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Here, the plaintiff states in his complaint that "defendants did intentionally and purposefully discriminate against [him] on account of his race" and that this conduct "constitutes a custom or practice." To state a claim for relief, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Here, the complaint fails to allege facts that show that Thomas was purposefully discriminated against or that discrimination was due to an official policy or custom. To state a claim, "the well-pleaded facts [must] permit the court to infer more than the mere possibility of misconduct." *Id.* at 1950. The complaint has failed to do so here, and thus Thomas has failed to "show" that he is "entitled to relief" in accordance with Rule 8(a)(2). *See id.* Thus, this claim will be dismissed for failure to state a claim.

**E. Leave to Amend**

Thomas requests leave to amend. In general, leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Where a complaint is vulnerable to dismissal under Rule 12(b)(6), leave to amend should be granted unless amendment would not cure the deficiency. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Here, it is possible that a new complaint could contain well-pleaded facts showing that Thomas is entitled to relief. Thus, leave to amend will be given.

Thomas will be given twenty-one days to submit an amended complaint.   The amended complaint must be a new pleading which stands by itself and is complete in all respects. *Young v. Keohane*, 809 F. Supp. 1185 (M.D. Pa. 1992). The new complaint must allege sufficient facts so that it shows that the plaintiff is entitled to relief on each of his claims, in accordance with the pleadings standards articulated by the Supreme Court in *Twombly* and *Iqbal. See Holmes v. Gates*, 403 F. App'x 670, 674 (3d Cir. 2010) ("[The plaintiff] might have cured her complaint by answering some very basic questions: What sort of conduct does [he] deem was retaliatory or harassing? . . . What specific working conditions created a hostile work environment? . . . What were specific actions of racial animus against [him]?").

Thomas is further notified that failure to respond in this manner may result in the dismissal of his claims.

### III. Conclusion

For the reasons explained above, the defendants' motion to dismiss (Doc. 5) will be granted in part and denied in part.  Except for the age-based retaliation claim at Count II

under the ADEA and the age-based retaliation claim under the PHRA at Count VI, the claims in the complaint will be dismissed. The plaintiff will be given twenty-one days to submit an amended complaint in accordance with the Court's opinion and order.   An appropriate order follows.


 6/21/11                                                              /s/ A. Richard Caputo
Date                                                           A. Richard Caputo
                                                               United States District Judge

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LAMAR R. THOMAS,

    Plaintiff                  NO. 3:10-CV-1946

        v.

                              (JUDGE CAPUTO)

POCONO MOUNTAIN SCHOOL
DISTRICT and DWIGHT R. PFENNIG,

    Defendants.

## ORDER

    **NOW**, this _21st_ day of June, 2011, **IT IS HEREBY ORDERED** that the defendants' motion to dismiss (Doc. 5) is **DENIED IN PART** and **GRANTED IN PART** as follows:

(1) With respect to the plaintiff's age-based retaliation claim at Count II under the ADEA and the age-based retaliation claim under the PHRA at Count VI, the motion is **DENIED**. These claims survive.

(2) With respect to all other claims, the motion is **GRANTED**. These claims are **DISMISSED** without prejudice.

(3) The plaintiff may submit an amended complaint within twenty-one days from the date of this order in accordance with the Court's opinion.


                              /s/ A. Richard Caputo
                              A. Richard Caputo
                              United States District Judge